JOSEF ZIELINSKI *vs.* EDWIN J. RILEY.

MAY 31, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This action of trespass on the case for negligence was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the de-

fendant. The plaintiff's motion for a new trial was denied and to this ruling the plaintiff duly excepted. The case is now before this court on this exception, which is number 7 in his bill of exceptions, and on six other exceptions taken by him during the trial. Exceptions 1 and 4 being neither briefed nor argued are deemed to have been waived. Exceptions 2, 3, 5 and 6, which raise substantially the same question and will be considered together by us, relate to alleged errors in connection with certain of the plaintiff's requests to charge the jury and to a certain portion of the charge by the court.

The plaintiff was injured when he was struck by the defendant's automobile on Westminster street, about opposite Perry street, in the city of Providence, around 1:30 o'clock, p. m. on July 12, 1929. Road and weather conditions were good. Westminster street, a main highway, runs practically east and west, Providence proper being to the east and Olneyville, another business section of the city being to the west of the place of the accident. There are two street railway tracks in the center of Westminster street, inbound to Providence and outbound to Olneyville. Perry street runs into but does not cross Westminster street from the north. At the northeast corner of the intersection there is a building on the building lines. The plaintiff lived in a house on the southerly side of Westminster street about opposite and somewhat to the east of this intersection.

The pertinent testimony, in substance, is as follows. The plaintiff, who wanted to buy some ice, started from his house for an ice wagon, which was stopped at his call, on the westerly side of Perry street facing Westminster street with the horses on Perry street some twenty feet back of the northerly building line of Westminster street at the northwest corner of the two streets. The plaintiff testified that before leaving the southerly sidewalk of Westminster street he looked in both directions and saw

16

no traffic; that he walked across Westminster street in a "slant", or northwesterly direction, his back being somewhat towards the city of Providence; that when he had passed the center line of Westminster street and was on the third track, meaning the inner rail of the outbound track, he heard his three year old child calling to him from in front of his house; that he turned and faced the child, telling him, in words and by motions with his hand, to "go back"; that, facing in a southeasterly direction as he then was, he could see "up Westminster street", that is, towards Providence; that, while in this position, he looked and did not see the defendant's automobile or any other traffic approaching him from that direction; that he again turned towards the ice wagon and, facing once more in a northwesterly direction, he looked first to his left in the direction of Olneyville and then to his right in the direction of Providence, when, for the first time he saw the defendant's automobile six feet away and coming towards him; that he just "stood there" and that he was struck on the right leg by the left front side of the automobile and thrown to the ground. The plaintiff insisted that he remained "in the same spot" on the inner rail of the outbound track from the time he turned to speak to the child until he was hit by the automobile, although in one place in his testimony we find him saying that he was "in the car track" when he was struck.

The testimony of the driver of the ice wagon, who was at the rear of the wagon getting the ice ready for the plaintiff, and of his helper, who was on the driver's seat holding the horses, is substantially to the same effect. Neither of these witnesses saw the defendant's automobile before the accident, as their view of Westminster street in the direction of Providence was obstructed by the building at the northeast corner of Westminster and Perry streets.

The testimony for the defendant is that the plaintiff ran blindly into the left rear side of his automobile. Louis E. McGowan, who was sitting in the doorway of his store, close to the plaintiff's house and on the same side of Westminster street, testified that the plaintiff was crossing Westminster street in a slightly diagonal direction towards the ice wagon on Perry street; that he saw no child on the sidewalk calling to the plaintiff; that the plaintiff did not stop in the middle of Westminster street but kept on going until he came in contact with the left rear wheel of the automobile, which the witness noticed just before the accident.

The defendant testified that just previous to the accident he was driving his automobile in a westerly direction, on the right side of Westminster street, and north of the outer or northerly rail of the outbound track, at a speed of fifteen to twenty miles an hour; that, as he glanced to his left, he saw the plaintiff running across Westminster street towards his automobile, the plaintiff then being some ten or fifteen feet to his left and almost opposite to where he, the defendant, was seated in the automobile; that he immediately checked his speed and pulled further to his right; that the plaintiff ran into the left rear side of the automobile; and that he stopped within ten feet from where the plaintiff was lying on the ground to the north of the outer or northerly rail of the outbound track.

Three of the four passengers who were with the defendant at the time of the accident testified to the same effect, although there were differences in their estimates of how far the plaintiff was ahead and to the left of the automobile when they first saw him running or walking fast across Westminster street toward the automobile. The fourth passenger did not testify because at the time of the trial he was living somewhere in New Jersey.

The plaintiff contends that the defendant is liable on the doctrine of the last clear chance. This doctrine is not

applicable to the facts in this case. The numerous cases from this and other jurisdictions cited by him are clearly distinguishable from the facts in the instant case. In all those cases the plaintiff had placed himself in a position of danger from which, in most instances, he could not extricate himself. His predicament, whatever its nature, was so obvious and continued without change on his part for such an appreciable interval of time that a person of ordinary prudence had a reasonable opportunity not only to appreciate his danger but also to use whatever means were reasonably available to avoid injuring him.

The situation in the instant case is entirely different. The plaintiff testified that he stopped on the inner rail of the outbound track and faced northeasterly towards the child on the southerly side of Westminster street; that from this position he could observe traffic coming from the direction of Providence; and that he actually looked and saw no automobile coming towards him from that direction. It avails a plaintiff nothing to say that he looked and saw nothing at a point where, if he had looked, he must have seen the on-coming vehicle. *Keenan* v. *Providence Journal Co.*, 52 R. I. 54. If he had looked, he would have seen that he then was in a position of safety. It does considerable violence to the testimony for the plaintiff to argue that the defendant must have seen him gyrating on the inner rail of the outbound car track, when he himself says that he did not see the defendant's automobile.

The plaintiff also testified that, before starting for the ice wagon from his position on the inner rail of the outbound track, he first looked to his left towards Olneyville and saw no traffic from that direction, and then to his right, when he saw the defendant's automobile six feet away from him. He further testified that he did not move from that position when the automobile struck him. Yet the evidence stands uncontradicted that the automobile was at all times to the north of the outer or northerly rail

of the outbound track, and that he fell to the ground to the north of that northerly rail. Taking his testimony on this point at its face value and considering it in connection with the uncontradicted evidence in the case, it was impossible for the plaintiff to be struck by the automobile while standing on the inner rail of the outbound track, as there would be a clearance of over five feet between him and the left side of the automobile.

It is difficult to believe that, in turning around in different directions, the plaintiff always remained "in the same spot" on the inner rail of the outbound track, as he testified. This claim is disproved by the great weight of the evidence, which clearly shows that the plaintiff was in motion when he came in contact with the left side of defendant's automobile and that his negligence was at least as late or later than the negligence, if any, of the defendant. This case falls squarely within the principle of *Coburn* v. *United Electric Rys. Co.*, 128 A. 435, in which this court said that the doctrine of the last clear chance does not apply where it appears that the failure of a plaintiff to avoid injury resulted from his want of due care in failing to observe his own danger and "where his opportunity for avoiding the injury was as late or later than that of the defendant."

The doctrine of the last clear chance is not applicable in all accident cases. In the instant case the trial justice instructed the jury respecting this doctrine and further instructed them under what conditions it would become applicable, provided they found those conditions established by the evidence. The charge, as a whole, was most favorable to the plaintiff. It is our opinion that in the circumstances of this case, he was not entitled to instructions on the doctrine of the last clear chance either as requested by him or as such requests were modified and explained by the trial justice. Plaintiff's exceptions 2, 3, 5 and 6 are overruled.

20

This case was properly submitted to the jury on the issues of the defendant's negligence and the plaintiff's due care. Both the jury and the trial court heard the witnesses and observed them while testifying. The jury, notwithstanding instructions which were most favorable to the plaintiff, returned a verdict in favor of the defendant and their verdict was approved by the trial justice. We have carefully reviewed the evidence and can find no reason which warrants us in disturbing the decision of the trial justice. The plaintiff's exception to the denial of his motion for a new trial is therefore overruled.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*McKiernan, McElroy & Going, Edward F. McElroy, Peter W. McKiernan, John S. McKiernan,* for plaintiff.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendant.