ELIZABETH DESFORGE *vs.* AMERICAN-BRITISH HOME
BUILDING ASSOCIATION *et al.*

JULY 21, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of trespass on the case for negligence, which was tried before a justice of the superior court sitting without a jury. He rendered a decision in favor of the defendants and the plaintiff thereupon duly prosecuted her bill of exceptions to this court. The only exception now relied on is to this decision.

The plaintiff seeks to recover damages for personal injuries suffered by her on January 4, 1938 when she fell or was pushed from a window in a hall in which a card party, to which the public was invited, was being held under the

alleged auspices of the defendant Supreme Council of the Royal Arcanum in the furtherance of its objects. The building in which the hall in question was located was owned by the defendant American-British Home Building Association and shortly before the time the plaintiff was injured a fire had broken out in said building.

This case has already been before this court on questions of pleading. *Desforge* v. *American-British Home Building Ass'n.*, 63 R. I. 305. At the present trial the plaintiff's declaration contained one count in which the defendants were charged, in effect, with maintaining a private nuisance, in that the aforesaid building was unsafe, unfit and dangerous as a place to accommodate public gatherings because it was not equipped with proper exits or other means of escape in case of fire.

It appeared from the evidence that in December 1937 the defendant American-British Home Building Association rented to the Pawtucket Council of the Royal Arcanum the hall in question for the evening of January 4, 1938, so that a card or bingo party could be held therein for the purpose of raising funds for the hospital service of said Pawtucket Council. A permit was issued by the proper authorities of the city of Pawtucket, and notices inviting the public to attend the party to be held on the above date appeared in the public press and at the entrance to the hall.

The evidence also showed that the building in which the hall was situated fronted westerly on High street in that city. It was two stories in height on that street but the easterly end was of three stories owing to the fact that the land sloped sharply downward toward the east away from the street. On each floor of the building there was a hall or place for public gatherings. The one involved in the instant case was on the top floor, that is to say, the second floor facing High street, but the third floor in the rear. This hall was 99 feet long on its north side and something over 95 feet in length on its south side. On the westerly or High street side it was about 28½ feet and on its easterly side

it was slightly over 39 feet in width. There were no windows on the south side, but on each of the other sides there were six. The height of the windowsills from the floor was 4 feet 1 inch.

There were two independent exits from the hall, one on the north and the other on the south side. These consisted of double doors about 5 feet 3 inches in width. The one on the north side was located about 22 feet and the one on the south side about 24 feet easterly from the front of the building. The doors in question each gave access to a separate flight of nineteen steps which led downward and terminated inside the building at the level of the sidewalk. Near the foot of each flight of stairs there was a door opening onto High street. The stairway on the north side of the hall was used as the entrance thereto. At the top of these stairs was a landing on which there was a ticket office. The stairway on the south side of the floor was ordinarily used just as an exit. It was equipped, both in the hall itself and on High street, with fire or panic doors, so called, which could be opened from within the building only. These doors had no locks but were equipped with panic bolts and were designed to open outward when slight pressure was applied against the bar which was on said doors.

On the evening of January 4, 1938 the plaintiff, who had never been in the hall before, purchased a ticket to the above-described card party and entered the building from High street by the north stairway. Numerous tables and chairs occupied most of the floor space in the hall, and the plaintiff took a seat at one of these tables. Witnesses estimated that there were between one hundred fifty and two hundred fifty people in the hall at that time. One witness, who had charge of the sale of the tickets, testified that there were about one hundred fifty persons present. Shortly before 9 p.m. a fire broke out in the basement, or first floor, of the building. It was a serious fire, the recall not being sounded until about midnight.

Dense smoke began to penetrate the hall and the people therein at once stopped playing and put on their street clothing. Many persons including the plaintiff, attempted to leave the hall by the stairways. Heavy smoke was coming up the one on the north side. Soon after the fire started the lights went out. In the excitement and darkness chairs and tables were upset and numbers of women, who comprised most of the gathering, began screaming and calling for help. The greater number of those in the hall, including the plaintiff, then went to its easterly side where several of the windows had been raised or broken to let fresh air in. Some persons escaped by climbing through these windows, using ladders to reach the roof of a garage about 15 feet below. In the confusion, however, the plaintiff was pushed by the crowd out of one of these windows and landed on the said roof.

On the pleadings the principal issue in the instant case was well defined. It was whether the defendants, or either of them, were guilty of maintaining a private nuisance in that the aforesaid hall was dangerous and unsafe, considering the use made of it on the occasion in question, by reason of the fact that it was not provided with adequate and proper means of egress, which fact the defendants knew or in the exercise of reasonable care should have known. This was the plaintiff's contention and she had the burden of establishing its correctness by a fair preponderance of the evidence.

In support of her position the plaintiff did not rely on the fact that the exits themselves were out of repair or improperly constructed; or that any part of the building was defective in any way. Neither did she claim that the defendants had violated any statute or any ordinance of the city of Pawtucket relating to the subject under consideration. At the time the fire occurred there was no statute or ordinance which required the presence of fire escapes on the building under the existing circumstances and, in fact, there were no fire escapes accessible from the hall. In the

absence of any statute or ordinance, the law is set out as follows in 4 R. C. L. 404: "At common law there was no duty imposed upon an owner of a building to provide fire escapes, nor consequent liability for failure to provide them, where the building was properly constructed for its intended use and purpose, the ordinary means of escape by halls, stairs, doors, and windows being deemed sufficient."

To prove her case the plaintiff depended largely on evidence showing the number and arrangement of the exits and other physical facts connected with the building. She presented no expert opinion testimony bearing upon the issue to be determined. She contended that under all the conditions prevailing at the time two exits were insufficient, and that their arrangement and location were improper in that they were entirely within the building and thus might be unavailable if the fire was so situated that they could not be used. Certain evidence submitted on behalf of the plaintiff also tended to show that the fire doors at the stairway on the south side of the hall were locked at the time of the fire. However, no one who had attempted to open them on that occasion testified as a witness. On the other hand, the defendants presented positive evidence to the effect that such doors were not locked and could not be locked from either side. Other evidence offered by the defendants showed, among other things, that the building, when constructed, was approved by the then building inspector of Pawtucket as complying with the building regulations of that city then in force; that the defendant American-British Home Building Association had owned the building since 1931 and that the halls therein had frequently been rented for public gatherings subsequent to that date.

The trial justice found, among other things, that the stairways were amply sufficient to provide a prompt and safe exit for such numbers of people as might normally be present in the hall at any one time, and that there was no proof that on the night in question anyone tried the fire doors and found them locked. He held that those in charge of

public places of amusement should take proper precautions for the safety of their patrons by providing proper and adequate exits; that while a fire is possible at any time it is not probable unless conditions in the building indicate that it might reasonably be expected; that there was no evidence of any such dangerous condition here; that those responsible for the hall could not be required to anticipate something which the ordinary prudent person could not reasonably foresee; and that the plaintiff had failed to satisfy him by a fair preponderance of the evidence that at the time of the fire the nuisance as alleged by the plaintiff existed in said building.

We have carefully considered the evidence herein and we have assumed, without deciding, that the Supreme Council of the Royal Arcanum is a proper party defendant. In so far as the decision of the trial justice is based on conflicting evidence it is settled, under our established rule, that such decision will not be disturbed by us unless we find that it is clearly wrong. *Warnard Constructors, Inc.* v. *Narragansett Brewing Co.*, 66 R. I. 182. We do not find that to be the case. In so far as his decision is based on undisputed facts, while we ourselves are entitled to draw inferences therefrom, we see no reason in this case for drawing any such inferences as would require us to hold that his decision was erroneous.

The plaintiff, however, in addition contends that in all halls and places of public gathering there is always a potential fire and panic hazard which the law has recognized. Therefore, she argues that the trial justice was in error when he referred in his decision to the "possibility" and "probability" of fire as bearing upon the duty of the defendants under the circumstances appearing herein, in that, according to her, he stated that they were not required to anticipate and guard against possible dangers in the nature of such hazards. She admits that the defendants were not insurers of the safety of those in the hall on the night in question but, if we understand her position, she maintains

that the trial justice limited too narrowly the duty of the defendants toward such persons under the present facts.

We are unable to agree with the plaintiff on this point. The general duty of a proprietor of a place of amusement is substantially as set out in *Cloutier* v. *Oakland Park Amusement Co.*, 129 Me. 454, at page 459, which was a case growing out of a fire in a dance hall: "The proprietor of a place of amusement, in maintaining such, is bound to exercise only the degree of care that would be expected of an ordinarily careful and prudent person in his position. . . . The proprietor of a place of public amusement is not an insurer against accident occurring because of the condition of the building, but, so far as the exercise of ordinary care will assure it, he is bound to provide and maintain a structure that will not, *because of any insecurity or insufficiency for the purpose for which it is used by him,* injure any person rightfully within it." (italics ours)

The duty of a lessee, similarly situated, in our judgment, would not ordinarily be any greater than that as set out above. An examination of the decision of the trial justice taken as a whole shows, in our opinion, that he applied to the facts before him the correct rule as to the defendants' duty toward the plaintiff. We feel that such decision should not, on this issue, be given the meaning apparently attributed to it by her. Therefore, we do not find that the trial justice erred in deciding that the defendants were not guilty of maintaining a private nuisance in the manner charged in the plaintiff's declaration.

The plaintiff's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment for the defendants on the decision.

*Thomas L. Carty,* for plaintiff.

*Walter J. Hennessey,* for American-British, &c.

*Arthur Cushing,* for Supreme Council of the Royal Arcanum.