237 A.2d. 717.

ANGELO A. COFONE *vs.* NARRAGANSETT RACING ASSOCIATION, INC.

JANUARY 31, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This action of trespass on the case for negligence, although commenced prior to the effective date of the superior court's new rules of civil procedure, was tried thereafter to a justice of that court sitting with a jury. At the close of all the evidence, the trial justice granted the defendant's motion for a directed verdict on five counts of the eight-count declaration under authority of rule 50 (b), and reserved decision on the remaining three counts. The case was then submitted to the jury which, after returning a $12,000 verdict, plus interest, for the plaintiff, was discharged. Thereupon the court entered a decision against the defendant on the motion reserved as well as a judgment on the verdict. The defendant appealed.

The posture in which the case comes to us is unusual. Not only was it commenced under one set of rules and tried under another, but, in addition, defendant failed to move for a new trial and bases his appeal solely on the ground that the trial justice should have directed a verdict in its favor on all counts. Neither of these unusual aspects, however, poses any difficulty. Procedurally, we apply the new rules because to do so is feasible and will work no injustice to defendant, *Bragg* v. *Warwick Shoppers World, Inc.,* 102 R. I. 8, 227 A.2d 582; substantively, instead of being concerned with the credibility of the witnesses or the weight of the evidence as we would were we reviewing a ruling on a motion for a new trial, we apply the directed verdict standard and consider all of the evidence and the reasonable inferences deducible therefrom most favorably to the plaintiff. *Waltz* v. *Aycrigg,* 103 R. I. 109, 235 A.2d 338. Within the frame of these principles we now outline the material evidence.

The defendant owned and operated a horse racetrack in Pawtucket. The plaintiff was a patron and, on the July

day in 1956 when he was injured, had gone to the track with a friend. As they approached the admission gate and joined a line of patrons waiting to pay their admission fees, it suddenly became dark and very windy. Heavy rain began to fall. Notwithstanding, plaintiff continued to stand in line, and when his turn came, paid the admission fee, proceeded through the admission turnstile, and then ran for an entranceway to the grandstand, about 150 feet away, in order to take shelter from the storm. As he reached his destination, an overhead door, about 400 pounds in weight and 7 feet by 9 feet in size, descended and struck him on the head causing serious injuries.

The door which struck plaintiff is one of four which hang from an overhead track above the entranceway. Generally open when the horses are running, the doors are lowered and the entranceway closed in off-seasons. They are operated on a spring by rollers, and each can be lowered by pulling a rope which hangs just inside the entranceway and within easy reach of a man of average size. Customarily during the racing season, two track employees are stationed by the entranceway. Their principal duty is to tend the doors, and to insure that no unauthorized person pulls the lowering ropes or in any other way tampers with the doors.

On the day of the accident when it started to rain, these two employees left their stations at the entranceway and went to the grandstand roof to lower some flags. Both employees were absent from their posts for about 25 minutes and it was during that interval that plaintiff was struck by the descending door. Three witnesses testified that some third person pulled the rope and lowered the door. Although they differed substantially as to the identity of that person, the parties have argued the case as if he were an independent newspaper vendor who was not in defendant's employ.

Premised on the foregoing facts, plaintiff claims in es-

sence that defendant was negligent (1) in failing either to warn him of the danger of the overhead door's coming down while he was beneath it or to provide protection against that danger; (2) in leaving the doors and the controls for lowering them unattended and in failing to take reasonable precautions to prevent them from being improperly closed; and (3) in failing properly to operate, maintain, supervise and attend them.

The defendant, assuming that the declaration thus framed narrowly limits the scope of plaintiff's claim — an assumption which is susceptible to considerable doubt under the fair notice concept of the new rules, see *Bragg* v. *Warwick Shoppers World, supra* — first calls our attention to the difference between what plaintiff pleaded and what he proved. It points out that the negligence primarily declared on by plaintiff was its alleged failure properly to operate, maintain, supervise and attend the overhead doors, whereas what he proved at the trial was that the immediate and direct cause of the accident was the lowering of the doors by a responsible third person for whose action it was not responsible. This material difference between the breach of the duty alleged and the proof adduced was sufficient, defendant argues, to entitle it to a directed verdict on the three counts on which decision was reserved. This is particularly so, its argument continues, because of plaintiff's neglect at trial either to move to amend his declaration or to request permission to make his pleadings conform to the evidence. The legal principle defendant urges probably would have been of assistance had this case been tried prior to the adoption of the new rules. *Collins* v. *Palmer*, 70 R. I. 143, 37 A.2d 658; *Shea* v. *First National Stores, Inc.*, 63 R. I. 85, 7 A.2d 196; *Sarcione* v. *Outlet Co.*, 53 R. I. 76, 163 A. 741; *St. John* v. *Rhode Island Co.*, 32 R. I. 447, 79 A. 1101. That pleadings be technically correct and conform to the proof was "pre-new rules" of significantly more im-

portance than it is now. Under what was then settled procedural law, any material variance between the essential allegations of a declaration and the proof adduced at trial could be fatal, even though evidence clearly irrelevant to the case as pleaded had been admitted without objection. *Ferla* v. *Rotella*, 92 R. I. 460, 169 A.2d 906. That principle, however, no longer controls. It has been negated by rule 15(b) of the new rules which, in pertinent part, provides that issues tried by express or implied consent, even though not raised by the pleadings, should be treated in all respects as if they had been pleaded even in the absence of amendment.

The pivotal issue, however, is not whether there was a variance between the allegations and the proof, but whether the injury sustained was proximately caused by defendant's negligence. That question has two facets. While separate, they are nonetheless so closely related as to be inseparable. Each involves proximate cause. The first is whether the harm to plaintiff was the reasonably foreseeable result of defendant's allegedly negligent conduct; and, the second is whether the intervening act of a responsible third person in lowering the door broke the chain of causation and thereby absolved defendant.

A resolution of these two issues requires a definition of the scope of defendant's obligation to plaintiff and of the degree of care it was called upon to exercise for his protection. Of course, it did not insure his safety, even though it had invited him as a member of the general public to its place of public amusement. As an admission-paying patron, he was, however, entitled to have reasonable care exercised for his protection against dangers about which defendant knew or reasonably should have foreseen in the exercise of such care. This does not mean that defendant was required to anticipate and protect him against the unlikely or the improbable, or even that ordinarily it would

be required to safeguard him against the obvious danger or one that was a matter of common knowledge, as to both of which he would ordinarily have assumed the risk. It does mean that it should at least have used such measures and means in the placement, maintenance, and use of the equipment on its premises and under its management and control as the ordinary prudent person would have reasonably employed in protecting his patrons against known dangers or those reasonably to be apprehended in the exercise of due care. *James* v. *R. I. Auditorium, Inc.*, 60 R. I. 405, 199 A. 293; *Kane* v. *Burrillville Racing Ass'n*, 73 R. I. 264, 54 A.2d 401; *Phelps* v. *Burrillville Racing Ass'n*, 73 R. I. 84, 53 A.2d 753; *Ephremian* v. *Sholes*, 72 R. I. 395, 52 A.2d 425; *Mercurio* v. *Burrillville Racing Ass'n*, 95 R. I. 417, 187 A.2d 665. See also *Desforge* v. *American-British Home Building Ass'n*, 69 R. I. 366, 372, 33 A.2d 203, 206.

Whether this is the extent of the duty of the operator of a place of public amusement, or whether it is greater, our decisions strongly hint at, but do not positively and unmistakably state. For example, in *James* v. *R. I. Auditorium, supra,* a case where a paying spectator, seated in an unscreened section of an ice hockey rink, was struck by a flying puck, we referred at 409, 199 A. at 295, to the defendant's duty as being that which " * * * the ordinary prudent person, in its position and with its knowledge of hockey games, would have reasonably employed in protecting an invitee from dangers reasonably to be apprehended," and in *Ephremian* v. *Sholes, supra,* the suit was against the operator of a roller skating rink for injuries sustained by a skater who was standing at a refreshment counter in an aisle. She had been run into and thrown to the floor by a woman, skating fast and recklessly. We held the operator to the duty of exercising such care for the injured patron's safety "* * * as the ordinary prudent operator of a skating rink would exercise under the same or similar circumstances."

*Newman* v. *Burrillville Racing Ass'n*, 81 R. I. 200, 100 A.2d 847, in no way qualifies or limits either *James* or *Ephremian*. When we said there that it would be "misleading, inaccurate and indefinite" to instruct the jury as requested that the defendant racetrack operator was under a "special obligation" to keep its premises in a safe condition for the purposes of its invitation, we in effect were saying that the *obligation* of the operator of a place of public amusement to its patrons, if *special* and something different from that owed by the occupier of private premises to his business invitees, was not without limitation and that the requested instruction would have been improper unless amplified or qualified by something in addition.

While *James* and *Ephremian* may approach, they do not definitively or unqualifiedly articulate the rule that the duty of care owed by the occupier or proprietor of a place of public amusement to its paying patrons is different from and greater than that owed generally by an occupier of private premises to his business invitees. What we said in those cases, however, was that one like defendant should be held to the standard, not of the ordinary prudent person, but to that which such a person, if the operator of a place of public amusement, would reasonably be expected to observe toward its patrons. We in essence there adopted, and we now specifically accept, the view of those authorities who, although they express it in various ways, in substance hold that the duty of "reasonable care" owed by an operator of a place of public amusement demands a higher degree of diligence than it does when applied to the owner of private premises. *Wells* v. *Palm Beach Kennel Club*, 160 Fla. 502, 35 So.2d 720; *Clark* v. *Monroe County Fair Ass'n*, 203 Iowa 1107, 212 N.W. 163; *Schubart* v. *Hotel Astor, Inc.*, 168 Misc. 431, 5 N.Y.S. 2d 203, aff'd 281 N.Y. 597, 22 N.E.2d 167; *Fimple* v. *Archer Ballroom Co.*, 150

Nebr. 681, 35 N.W.2d 680; *Lindgren* v. *Voge,* 260 Minn. 262, 109 N.W.2d 754; Restatement, Torts 2d, §344, p. 223.

The distinction we have drawn of the standard to be observed, while perhaps insignificant in the usual case, sometimes becomes important. It does in this case where defendant's argument is that what happened was not reasonably foreseeable. If this were a case of the ordinary land occupier, defendant's argument might be stronger. Here, however, it is an operator of a place of public amusement who is charged with failing properly to maintain, supervise, and attend the doors and to warn plaintiff that the door was falling. While it might be that an ordinary prudent person would not owe such an obligation to a business invitee entering a garage located on his residential premises, plaintiff argues, and in our opinion with merit, that it was for the jury to determine what dangers a racetrack operator should have perceived and what precautions and safeguards it should have taken for the benefit of its paying patrons, and particularly by one which knew that on each race day thousands of patrons would pass under a heavy overhead door which could be manually lowered by pulling on an easily accessible rope.

The defendant, however, calls our attention to the testimony of the track's maintenance employee who, although he had tended the doors for approximately 14 years, was unable to recall a single instance of any unauthorized person tampering with the doors or pulling or tugging on the ropes which lowered them. That no such incident had ever occurred, it argues, relieved it of any responsibility to provide against a danger which from its own experience was so unusual and so unlikely to occur as not to be reasonably foreseeable.

In *Mercurio* v. *Burrillville Racing Ass'n,* *supra,* upon which defendant premises the foregoing argument, as well as its further contention that the intervening act of the

independent newspaper vendor broke the chain of causation between its negligence and plaintiff's injury, a racetrack patron was injured when, while in the area between the grandstand and the walking ring, he either walked into or was struck by a motor vehicle operated by an agent or servant of an independent contractor who had been retained by the defendant to take pictures of each race from various vantage points around the track. In holding that a verdict had properly been directed for the defendant, we recognized that the operator, although required to provide against dangers which from usual experience were likely to arise, was under no such responsibility as to "the unusual or unlikely or the remote or slightly probable event." Evidence of other accidents of a similar nature, we said, however, would have tended to furnish a basis for a reasonable inference that the defendant knew or should have known there was a reasonable probability of danger to its patrons from the operation of automobiles in that area.

Arguing from *Mercurio,* defendant concludes that what happened here was improbable, remote and unlikely because it had never before happened and was therefore unforeseeable and not actionable. That conclusion ignores a distinguishing fact which, while present in this case, was not in *Mercurio,* viz., the presence of the track attendants who were specifically charged with tending the doors in order to insure that no unauthorized person would either tug or pull the ropes which lowered them, or would otherwise interfere or tamper with them. The assignment of those men generally to door-tending duties suggests at least the possibility of reasonable inferences that the risk that a patron might be injured if some mischievous, curious or intermeddling third party tampered with the doors was in fact anticipated by defendant; that it was a danger which was known to defendant; that it was the anticipation of that danger which prompted defendant to station attend-

ants at the entranceway rather than to install a type of lowering device which could not be tampered with; and that in posting attendants to guard the doors defendant adopted a precautionary measure against a known danger such as an ordinary prudent racetrack operator would have taken in the circumstances in order that the safety of its patrons would not be jeopardized.

This danger which the defendant apprehended and which prompted accident-preventive steps suggests also the possibility that the intervening act of the independent newspaper vendor was not so remote that it could not reasonably have been foreseen as a natural and probable result of the original negligence; or at least that a jury might not so say. The defendant's long-standing practice was purposed upon preventing strangers from tampering or interfering with the doors. In now arguing that the risk of tampering with the doors was not reasonably foreseeable, it ignores completely its own anticipation that the doors and the ropes which lowered them were so positioned that there existed the real possibility that to leave them unattended might involve the risk of a stranger meddling with them. What it feared might happen if the entranceway were left unguarded was what actually happened. In these circumstances, whether the intervening act of a responsible third person broke the chain of causation or whether instead defendant's omission was a concurring cause was for the jury to determine. *Denisewich* v. *Pappas*, 97 R. I. 432, 198 A.2d 144, and cases cited therein.

A similar case is *Paranzino* v. *Yonkers Raceway, Inc.*, 9 Misc. 2d 378, 170 N.Y.S.2d 280. In that case there was testimony that a police officer stationed at the head of a stairway at the racetrack would induce a degree of caution in those using the stairs, especially in their regard for the safety of other patrons. In finding for a plaintiff whose fall on the stairs was in part caused when he was pushed by

another patron, the court said that the defendant's failure to adhere to the salutary practice of stationing a police officer at the stairway made the evidence reasonably susceptible to the conclusion that it had failed in its duty to the patron. So too in this case. What made possible an inference of negligence here was that defendant anticipated that what in fact did happen was likely to happen and for that reason had customarily stationed attendants at the entranceway to guard against what a jury might say defendant knew to be a danger.

Finally, defendant calls our attention to those cases where we have said that it avails a plaintiff nothing to say that he looked and saw nothing at a point, where, if he had looked, he must have seen what was there. *Lawton* v. *Vadenais*, 84 R. I. 116, 122 A.2d 138; *Almy* v. *Vien*, 87 R. I. 479, 143 A.2d 143; *Zielinski* v. *Riley*, 61 R. I. 14, 199 A. 693; *Keenan* v. *Providence Journal Co.*, 52 R. I. 54, 157 A. 302. Analogizing from these cases, defendant argues that plaintiff would have seen the descending door if, as he testified, he had been looking at the grandstand entrance as he ran toward it in order to gain shelter. In failing to keep a proper lookout for that door, defendant argues, plaintiff heedlessly encountered a known danger and was therefore guilty of contributory negligence as a question of law.

The cases upon which defendant relies are clearly distinguishable. Other than *Lawton*, each involves a claim either of a pedestrian or a motor vehicle operator who did not see the moving vehicle which struck him, notwithstanding his testimony that he had carefully looked in the direction from whence it came.

In the *Lawton* case, and defendant relies particularly on it, a tenant sued his landlords for injuries allegedly caused by a fall sustained while proceeding along a defective passageway in the yard outside the demised premises. The defendants invoked the "look-and-see-nothing" doctrine as

a defense. We rejected the plaintiff's argument that the doctrine applied only to "moving vehicle" cases; we held that it extended as well to "static condition" cases; and we concluded that the plaintiff was contributorily negligent as a question of law inasmuch as he would have seen the obvious and known defect, if as he claimed, he had been paying due heed while walking along the defective passageway. It is in reliance upon this facet of the *Lawton* case that defendant here urges that plaintiff should be barred by his own contributory negligence because he would have seen the descending door if, as testified, he had been looking at the entranceway as he ran towards the grandstand.

The defendant's analogy between *Lawton* and the factual situation in this case fails. Here, plaintiff, unlike his counterpart in *Lawton,* was not faced with a known and obviously unsafe condition. Indeed, the facts are quite to the contrary. He was running with others toward the grandstand in order to take cover and as he arrived at the entranceway the descending door struck him on the forehead. Since the aperture was only 9 feet high, the door when it hit him could only have descended about 4 feet. Whether at the time it started down he was then so close to the entranceway as to be able to observe its descent without directing his attention upwards rather than to where he was going and along the path he was travelling is impossible for us to say, and whether at that time and place he would have been exercising due care for his own safety if he had diverted his attention from the path he was following and had looked instead to see whether the door was descending is certainly susceptible to a reasonable doubt.

Much more in point, however, than *Lawton* is *Werkman* v. *Howard Zink Corp.,* 97 Cal. App.2d 418, 218 P.2d 43. There a pedestrian was struck on the head by an extending overhead door while she was walking along an alleyway. In

holding that she was not contributorily negligent as a question of law, the court said at 421, 218 P.2d at 46:

"Assuming that plaintiff was running with her head down, it does not follow that she was negligent. A person travelling on a public highway, whether walking and looking straight ahead or running and looking down, cannot be said to be negligent as a matter of law because she did not foresee that an overhead door would descend upon her. It cannot be said as a matter of law that plaintiff was guilty of contributory negligence."

The evidence in this case, looked at in the light most favorable to the plaintiff's case, clearly is not susceptible to the single reasonable inference that the plaintiff was guilty of contributory negligence as a question of law. In these circumstances the issue of whether he was reasonably careful for his own safety was properly submitted to the jury. *Compo* v. *Dexter,* 101 R. I. 311, 222 A.2d 681; *Ferretti* v. *Berry,* 96 R. I. 67, 189 A.2d 344; *Calci* v. *Brown,* 95 R. I. 216, 186 A.2d 234; *Kenyon* v. *Murray,* 90 R. I. 423, 159 A.2d 376; *Quinn* v. *Poole,* 85 R. I. 280, 130 A.2d 364.

For the reasons indicated, the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Cappuccio & Cappuccio, Louis B. Cappuccio, Frank S. Cappuccio,* for plaintiff.

*Keenan, Rice & Dolan, John T. Keenan,* for defendant.