**353 A.2d 617.**

WILLIAM B. JASIONOWSKI *vs.* BURRILLVILLE RACING
ASSOCIATION.

MARCH 22, 1976.

PRESENT: Paolino, Acting C. J., Joslin and Kelleher, JJ.

PAOLINO, J. This is a civil action for personal injuries sustained by the plaintiff when he tripped and fell over a bench support at Lincoln Downs Racetrack, a horse racetrack owned and operated by the defendant corporation. The case was tried before a justice of the Superior Court and a jury. After the plaintiff rested, the defendant moved for a directed verdict. The trial justice reserved decision on this motion and submitted the case to the jury. The jury returned a verdict for the plaintiff in the total sum of $6,000. The verdict also included specific findings by the jury, in the form of responses to interrogatories submitted to it in accordance with the comparative negligence statute, that the plaintiff and the defendant were each guilty of 50 percent negligence.[1] A judgment was then entered, reducing the plaintiff's recovery to $3,000. The trial justice thereupon granted the defendant's motion for a directed verdict and a judgment on the verdict was entered accordingly.

The plaintiff then filed a motion for an additur or new trial on the issue of damages alone if defendant did not agree to an additur. After hearing plaintiff's motion, the trial justice, pursuant to Super. R. Civ. P. 50(c), conditionally granted it, adding the sum of $10,000 to the original sum of $6,000, for a total of $16,000, and then reducing the sum to $8,000 in accordance with the jury's prior finding of 50 percent negligence on plaintiff's part. The defendant filed a consent to this additur, conditional upon the outcome of plaintiff's appeal from the directed verdict.

The case is before us on plaintiff's appeal from the judgment entered in defendant's favor on its motion for a directed verdict. Thus, the only issue before us is whether the trial justice erred in granting defendant's motion for a directed verdict.

The determination of this question requires an examina-

---

[1] See G. L. 1956 (1969 Reenactment) §§9-20-4 and 9-20-4.1.

tion of the record in the context of the rule governing the duty of a trial justice in passing on a motion for a directed verdict. We address ourselves briefly to the governing rule which we set forth as follows in *Hamrick* v. *Yellow Cab Co.,* 111 R. I. 515, 304 A.2d 666 (1973):

> "In considering a motion for a directed verdict the trial justice must view all of the evidence in the light most favorable to the adverse party and is obliged to give the adverse party the benefit of all reasonable and legitimate inferences which may be properly drawn therefrom, without sifting or weighing the evidence, or exercising his independent judgment as to the credibility of the witnesses who have testified. If after taking such a view, the trial justice finds that there exist issues upon which reasonable men might draw conflicting conclusions, the motion for a directed verdict should be denied and the issues should be left for the jury to determine. In reviewing the trial justice's decision we are bound by the same rules." *Id.* at 522, 304 A.2d at 671.

With that rule to guide us, we examine the record in the case at bar. The complaint filed by plaintiff includes the following allegations. On the afternoon of December 9, 1972, defendant was operating its racetrack, there being a regularly scheduled meet in progress on that day. The plaintiff was lawfully on defendant's premises as a business invitee. As an operator of a place of public amusement, defendant owed its patrons, such as plaintiff, the duty of reasonable care demanding a higher degree of diligence than that owed by an owner of private premises. This duty included an obligation to keep its premises, specifically the benches provided by defendant for the seating of its patrons, in a safe condition for the use of said patrons. Notwithstanding its duty, as aforesaid, defendant negligently and carelessly allowed and maintained said benches in an unsafe condition for the use of its patrons. As a direct and proximate result of said negli-

gence and carelessness, plaintiff, while in the exercise of due care, tripped and fell over one of the aforesaid benches and sustained serious injuries, etc.

The defendant filed an answer denying all the material allegations of plaintiff's complaint.

Next, applying the directed verdict standard, we address ourselves to the material evidence and consider all such evidence and the reasonable inferences deducible therefrom in a light most favorable to plaintiff. *Hamrick* v. *Yellow Cab Co., supra; Cofone* v. *Narragansett Racing Ass'n,* 103 R. I. 345, 237 A.2d 717 (1968); *Waltz* v. *Aycrigg,* 103 R. I. 109, 235 A.2d 338 (1967).

The plaintiff's testimony is substantially as follows. On December 9, 1972, he was 74 years old. On that day he arrived at Lincoln Downs with a Mrs. Anna Ostreyko after the sixth race. Mrs. Ostreyko placed a bet on the seventh race and then they went to the grandstand area at a location where there were four or five rows of benches lined up, with the last one resting against the wall. This was the first time he had seen the benches lined up in this manner, as they had usually been scattered here and there around the area. He had been attending races at Lincoln Downs since the track opened and he always went to the grandstand area. The floor upon which the benches had been placed was asphalt and was slanted so that persons looking from the back bench toward the track would have a better view over the other benches.

The plaintiff and Mrs. Ostreyko walked over to the four or five rows of benches and sat down on the last bench against the wall to watch the seventh race. There was not much room between the benches — about a foot between the bench he sat on and the bench in front of it. Numerous people were seated on the benches in front of him. There were people seated to the right of him on the bench where he was sitting. The benches were mov-

able and slidable. Because of the closeness of the benches, plaintiff had difficulty getting into his row. That is, the arrangement of benches required that he shuffle sideways into his seat. He squeezed into the last row and sat down. Mrs. Ostreyko followed him and sat at the end of the bench to his left.

After the seventh race, plaintiff decided to place bets on the eighth race for Mrs. Ostreyko and himself. He stood up and began to walk out sideways, shuffling from right to left. The distance from the front of his bench to the back of the bench immediately in front of him was about one foot. He had to cross in front of Mrs. Ostreyko by stepping over her feet and legs. Just as he was stepping over her legs his left foot caught on the support of the bench in front of the bench he had been sitting on, causing him to fall.

Mrs. Ostreyko, who, at the trial date, was 80 years of age, testified through an interpreter. She, in substance, corroborated plaintiff's version of the events that occurred at Lincoln Downs on the day in question. She estimated, by showing with her hands, that the distance between her legs and the bench in front of her was about 6 or 7 inches at the time plaintiff passed in front of her.

The plaintiff called Arthur Patenaude, defendant's track superintendent for the last 11 years, as an adverse witness. His testimony is in substance as follows. The defendant had a policy of allowing individuals into the track without charge following the sixth race. The bench which was on display in the courtroom as an exhibit was a typical kind of bench which had been on the track premises on December 9, 1972. It weighed between 20 and 30 pounds. The surface upon which a spectator would sit was made of wood and was supported by three aluminum supports. There were benches scattered throughout the grandstand area, but in the area where plaintiff fell, the benches had

been set up in rows approximately 1 month before the date of plaintiff's fall. The benches were movable in that they were not bolted to the asphalt floor in the grandstand area. They were normally set between 12 and 14 inches apart and on December 9, 1972, they were set up immediately before posttime. On that day, the superintendent had not personally checked to see how far apart the benches had been set. They were in a sloped area with about a 5-degree pitch from the rear bench to the front bench.

Francis O'Brien, who was employed by plaintiff as an investigator, testified that he went to the track and measured the slope in the grandstand area with a protractor. He calculated that the slope was approximately 8 degrees. He also took photographs of the benches and the area in question. These were admitted as exhibits and are part of the record in this case.

In granting defendant's motion for a directed verdict, the trial justice said:

"There is no evidence of negligence shown by the plaintiff. No evidence of any defect in the settee, there is no evidence that the injury was caused by any movement of the settee. In fact, the evidence indicates that people were seated on the settee at the time of the incident and that the plaintiff tripped over one of the supports of the settee and was thereby injured. Under the circumstances the Court feels there was no evidence for the jury to consider on the question of negligence and will direct a verdict for the defendant and instruct the clerk to enter up judgment for the defendant for cost."

The plaintiff argues that in passing on defendant's motion for a directed verdict the trial justice did not perform his duty in accordance with the guidelines set forth in our cases. He contends that the evidence discloses several controvertible issues of fact which warranted a determination by a jury. Specifically, he urges that the evidence

raised .the basic issues involved in a case of this sort, namely, whether, on the facts, defendant could be changed with negligence for the manner it had placed and maintained the benches for the use of its patrons and whether plaintiff took reasonable precautions for his own safety in leaving his seated position.

Before discussing the specific issues raised by plaintiff it may be helpful to dispose of certain findings made by the trial justice in his decision. We agree with his findings that there is "[n]o evidence of any defect in the settee" and that "there is no evidence that the injury was caused by any movement of the settee." We also agree with his finding that "* * * the evidence indicates that people were seated on the settee at the time of the incident and that plaintiff tripped over one of the supports of the settee and was thereby injured." Thus, if by the use of the word "maintained" plaintiff means whether the bench was kept in a condition free of defect, the answer is obvious. There is no evidence in this record to show otherwise. Nor is there any evidence that plaintiff fell or tripped because of the movement of any bench.

The only question is whether there is any merit to plaintiff's inquiry "* * * whether on the facts defendant could be charged with negligence in the manner it had placed * * * the benches for the use of its patrons * * *." The answer to this question depends upon the scope of defendant's obligation to plaintiff and the degree of care it was required to exercise for his protection.

We considered this question in *Cofone* v. *Narragansett Racing Ass'n, supra,* where we said, in speaking of the scope of defendant's duty:

> "Of course, it did not insure his safety, even though it had invited him as a member of the general public to its place of public amusement. As an admission-paying patron, he was, however, entitled to have reasonable care exercised for his protection against

dangers about which defendant knew or reasonably should have foreseen in the exercise of such care. This does not mean that defendant was required to anticipate and protect him against the unlikely or the improbable, or even that ordinarily it would be required to safeguard him against the ·obvious danger or one that was a matter of common knowledge, as to both of which he would ordinarily have assumed the risk. It does mean that it should at least have used such measures and means in the placement, maintenance, and use of the equipment on its premises and under its management and control as the ordinary prudent person would have reasonably employed in protecting his patrons against known dangers or those reasonably to be apprehended in the exercise of due care." *Id.* at 350-51, 237 A.2d at 720-21.

Then, after discussing the question whether the duty of the operator of a place of public amusement to its patrons was somewhat different from that owed by the occupier of private premises to his business invitees, we held that the duty of reasonable care owed by an operator of a place of public amusement demands a higher degree of diligence than it does when applied to the owner of private premises. *Id.* at 352, 237 A.2d at 721.

Viewing the evidence in the light most favorable to plaintiff, as we must in passing on a motion for a directed verdict, and keeping in mind the duty owed plaintiff under the standards set forth in *Cofone* v. *Narragansett Racing Ass'n, supra,* is there any evidence in this record which could support a finding that defendant was guilty of negligence in placing the benches in the manner which it did? We find none. There is no evidence in the record that an accident such as that which happened to plaintiff was likely to happen to patrons or that it was the natural or probable result of the manner in which the benches were placed.

The plaintiff's theory at the trial seemed to be that this type of bench was movable and was placed in a slanted

area at the track and that this constituted a dangerous condition. Now he argues that defendant's negligence inhered in its placement of the benches too close together. As we view the record, there is no evidence to support either theory that plaintiff's fall resulted from the manner in which the benches were placed.

It is obvious that plaintiff misjudged whether his foot was over the bench support when he attempted to step over Mrs. Ostreyko's legs. There is no evidence that any of the benches moved when he fell or that he fell because any of the benches moved; nor is there any evidence that there was any substantial difference in the space between the benches from the time he first sat down until he left to place the bet. On this record there is no evidence that defendant failed to exercise reasonable care in placing and maintaining the benches under its management and control so as to protect its patrons against danger that was reasonably foreseeable.

Notwithstanding plaintiff's contention to the contrary, we are convinced that in granting defendant's motion for a directed verdict, the trial justice was satisfied that defendant had adequately discharged its duty of exercising the required "higher degree of care" in the placement and maintenance of the benches for the use of its patrons. The record shows he was familiar with our decision in *Cofone* v. *Narragansett Racing Ass'n, supra,* and plaintiff has failed to show that he acted other than in accordance therewith.

We find no merit in plaintiff's argument that the trial justice's decision fails to comply with this court's requirement that he point to the evidence on which he relied in ruling on defendant's motion for a directed verdict. His decision shows and expressly states that he found no evidence of negligence, no evidence of any defect in the settee, and no evidence that the injury was caused by

any movement of the settees. The decision also explicitly states that people were seated on the settee at the time of the incident and that plaintiff tripped over one of the supports of the settee. But even if we assume that he did not refer to the evidence on which he relied and it becomes our duty to examine the record, and independently determine whether his decision is supported by the evidence, *Russo* v. *Odell,* 105 R. I. 349, 352, 252 A.2d 135, 137 (1969), we have no hesitancy in saying that, upon examining the record, we agree with the trial justice's decision granting defendant's motion. We are satisfied that defendant had adequately discharged its duty of exercising the higher degree of care required by our holding in *Cofone* in the placement and maintenance of the benches for the use of its patrons.

In these circumstances it will serve no useful purpose to consider the other issues raised by the plaintiff or to discuss the cases cited by him.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

Mr. Chief Justice Roberts was present at oral argument but retired prior to consideration or decision of this case. Mr. Justice Doris did not participate.

*Paul A. Lietar, Joseph H. Parys,* for plaintiff.

*John F. Dolan,* for defendant.